Public case, please. I always forget. 19-0739 Gordon Gonzales, Garfield Park Conservatory Alliance Alright, tell us who you are and who you represent. I'm Richard Gonzales on behalf of the Plaintiff Appellant. And I'm Catherine Majo on behalf of Defendant Athlete Garfield Park Conservatory Alliance. Okay, 15 minutes apiece saves you time for rebuttal. And we're ready for you. Thank you. May I proceed? May it please the Court. Good morning, Your Honors. I'm Richard Gonzales of Chicago Kent Legal Clinic on behalf of the Appellant, Lauren Gonzales. I'm going to be very brief because I think this case turns on a very narrow legal issue, more so than on whether there was ample evidence for summary judgment or what a reasonable jury could believe. I think the narrow issue is whether under Illinois law, the firing of an employee for having complained internally of safety concerns and having filed a complaint with OSHA falls under the tort of retaliatory discharge. And I think that question has been answered exclusively in the affirmative by Illinois state courts, including the decisions in Gomez v. Finishing Company and Sherman v. Kraft Foods and the other decisions that we cite at page nine of our brief. I've looked for any Illinois state court decision that went the other way that said filing an OSHA complaint is not a predicate for a retaliatory discharge case. And I couldn't find any. And the appellee was unable to cite any in their brief either. Now, the appellee relies very heavily on the Supreme Court case Turner v. Medical Center. And I think that case is a very good discussion of retaliatory discharge in general. But it's off point because it did not involve an external reporting like here and because the safety concerns raised by Mr. Turner were viewed as too insubstantial and speculative, just disagreements between him and management. I think it's important here that the petitioner and her coworkers raised safety and security issues long before the OSHA complaint. Petitioner testified she sat alone at the entryway to this big facility about 90% of the time. These were exclusively young women who sat alone in this entryway greeting the public. And after a few disturbing incidences, a man in a state of undress, visitors shooting drugs in a washroom, inebriated visitors, she and the others requested a panic button or a video surveillance system. And they would not install it. So it was the incident of March 31, 2017, that convinced her to file an OSHA complaint. That's the data. So what, counsel, what specific law or ordinance or any violation of anything was the employer not satisfactorily providing for this employee? Well, I think the regulation, as I read those two cases, Gomez and Sherman, the regulation was the OSHA regulations saying that danger in workplaces is something to be expected. What regulation of OSHA, though? What regulation? And what danger in the workplace. Right. Well, that's correct, and I think that's an important issue, Your Honor, that OSHA did not, in fact, address these kind of dangers. OSHA was aimed at asbestos or machines that are dangerous, I agree, but reasonable, good faith belief. And that's why we cited, in particular, the Illinois decision, Johnson v. World Color Press, that says the person's reasonable belief is enough. But why is it reasonable is what I'm having a problem understanding. Well, Your Honor, I would answer it this way. I would say when this fellow came in and said, I'm from the Trump administration and this is your last day. Now, admittedly, that's an ambiguous comment. It could mean I don't like the way you treated me. It could mean I'm from immigration and you look like you're Hispanic so I'm going to report you. It could mean even worse, though. It could mean I'm going to harm you. This is your last day. She's out there all alone. Isn't that somewhat speculative? Yeah. Oh, yes, I was thinking it's entitled to different meanings. But I think a jury would say if you're that young plaintiff sitting out there all alone, no security, no panic button, no video, isn't that enough? Did she have a phone? Was there a phone on the desk? Yes. They could have tried to contact the security person. It's a big facility with one security guard. But, yes, they could have tried to reach in by phone. Would anything have happened to her if she had left to go find a supervisor at that point? I mean, if she had just gotten up and said, excuse me, sir, I'm going to go get a manager to help you, gone and back to find a manager. Well, Your Honor, they are under instructions not to leave that front desk. How old is she? She's 21 or 22. Not to leave that front desk alone. And proximity, finding that person or supervising them. She's at, we'll say, just for sake of argument, she's at the low end of the totem pole. And in the back someplace there are people who are higher than she is. Yes. So she certainly could have found someone who had more authority. Even if it wasn't the right person, she could have found someone with the right authority to come deal with this guy. Yes. She was worried. I don't blame her for being worried. This is your last day. Then she started reiterating her security concerns to Mr. Domitowicz. And on June 5th is the morning she said to him, I just filed a complaint with OSHA. Now, three or four hours later, he issues two disciplinary write-ups. And they say, quote, not following the chain of command. Quote, don't go over my head. Quote, don't e-mail the director. So he was angry about this. And a few days later, he used to call her Norma Ray for the movie because of the complaints she would raise. A few days later, he fires her for the stated reason of not having arranged coverage for that Father's Day shift on June the 18th. Well, I'll be very brief on that part of the case. I mean, I think it's poor policy to allow an employer to be able to say, gotcha, you went to the wrong place to complain. If Ms. Gonzalez had called the police and said, I view this as a threat of assault, she clearly would have been covered under Illinois law if she had filed a police report and they fired her because of it. So to allow the employer to say, well, you went to the wrong place. OSHA turned down this request, though, because this isn't what they cover, right? Oh, right. It's similar, Your Honor, to the SEC case. The SEC said in Johnson, that's not our domain. And the other reason she was terminated was because she was a no-show. Is that correct? Well, that's the argument. But here, I think, is important. Playa testified that she never failed to get approval and that when they were going to trade shifts, Mr. Donatowicz said to them, quote, deal with it yourselves. Quote, work it out yourselves. And that's what she did. Now, I asked him in his deposition, did she have the worst attendance? And he said, quote, I'm hesitating. It's hard to say. And a moment later, he said he didn't have any documents showing how her attendance ranked with the other employees. So I think a jury could find that was pretext. He couldn't even testify that her attendance was worse than anyone else's. So I think, finally, that a reasonable jury would find that he seized on that swapping of the shift on June 18. Do you know if there was anything in the – was there even an employee handbook? Was there any kind of employee set of rules, expectations, whatever you want to call it? Was there anything that they gave people who they hired that said, hey, if you want to swap a shift, just do it on your own, don't bother to tell us? Or is it possible that the pattern and practice of the employer was, hey, you can swap your shifts, you can find someone who can take your shift, that's great, but you've got to let us know who to expect because we have to let payroll know. Oh, certainly. Somehow, someone has to let someone know. Is there anything? I have two responses. One, I think, for summary judgment. Her testimony is he said to them, don't come to me with this, arrange the swap. Well, arranging the swap is different than reporting then that the swap has been completed. And she testified and would testify again that she told him. He knew she wasn't going to be there that day. Did she tell him that there was going to be a swap and that she had gotten Mary or Susie or someone to take her place? Oh, yes, yes. He will say Mr. Donatoaks knew who that person was going to be. So I would say that he told them they could do it, and they did it all the time, the record would show, and it wasn't the real reason that they fired him. The real reason was the anger about these complaints. Thank you. Thank you. Good morning. My name is Catherine Nadeau, and I represent Defendant Appleweek, our Field Park Conservatory Alliance. Excuse me. Could you speak up, please? Yes, of course. Is that better? You have to use your own volume. Don't count on the mic. I will attempt to project like the veteran stage performer I one day aspire to be. Thank you. So, Your Honors, this case asks whether a terminated employee can escape the general rule of at-will employment in Illinois law and cloak herself instead in the whistleblower protections for reporting to OSHA her individual workplace grievances rather than any complaint of illegal activity by her employer. This case was resolved on summary judgment in the trial court below, and we're asking you to affirm that decision today. What's undisputed in the record from the trial court is the content of Ms. Gonzalez's complaints, both her internal complaints and her OSHA complaints. Those were all made in writing by Ms. Gonzalez, and they are all in the record for your review. And what you can see in those complaints is that Ms. Gonzalez was not reporting any illegal activity by the Alliance. She was not reporting any perceived violation of a regulation or even any violation of an internal policy regarding the Alliance's security or safety obligations. Instead, she reported both to her superiors and then to OSHA, when she didn't get a response to her satisfaction from her employer, that she was upset by the setup of the lobby, where the tables were placed in the lobby. She didn't like where her desk was. She was upset, indeed, about a comment she got from a visitor in March, and she was also upset that the board was not sufficiently hearing the visitor services group. All of those are valid grievances for an employee to have, but they do not arise to a clear mandate of public policy that her employer has to abide by or indeed could have known about in advance of her firing. Under Illinois law, for retaliatory discharge torts, the plaintiff has to show that her firing violated a clear mandate of public policy, which could be found in the Constitution, in statutes, or in judicial decisions when it's not present in the first two areas. Ms. Gonzalez has pointed to none of those things in this case. Instead, what she has pointed to is individual workplace grievances that either she or, allegedly, her other employee co-workers had with her boss, with her security setup. Those are not sufficient to violate a clear mandate of public policy and bring her within the scope of whistleblower protections for retaliatory discharge. There's no whistleblower protections here because she didn't blow the whistle on anything that the alliance was doing wrong. The alliance wasn't even responsible for the security at the Garfield Park Conservatory. That's the province of the Chicago Park District. There is no connection between her complaints and anything that the alliance did to violate a law or a regulation or even an internal policy. With respect to all of the factual issues that Mr. Gonzalez, plaintiff's attorney, has mentioned this morning about the facts and circumstances regarding Ms. Gonzalez's termination, those respectfully are not at issue here. The question of whether there is a clear mandate of public policy is a legal question for the court to decide, as well as whether that policy was violated. What Ms. Gonzalez says about what Mr. Donatowicz said with respect to shift swapping or whether, as is very disputed, Mr. Donatowicz wrote her up after hearing about the OSHA complaint does not matter for this legal question. Ms. Gonzalez needs to point to a clear mandate of public policy that existed before her termination that was sufficiently specific that her employer knew about it and knew that violating it would subject it to legal liability and then that her firing actually violated that clear mandate of public policy. She hasn't done that. Nor, despite all the statements about a good faith belief that Ms. Gonzalez had that OSHA was the correct agency to report to, is there any evidence that she had a good faith belief she was reporting wrongdoing or illegal activity by her employer? You can read the complaints yourself that she filed with OSHA and that she sent to her internal supervisors and to the Chicago Park District. She never said that the alliance was breaking a law or she felt that this was wrong or that she could point to any specific policy that they were in violation of. She said she felt not supported. She wanted the board of the alliance to listen to her in visitor services and she wanted the visitor services employees to have more of a say over their immediate workplace environment. There's no indication in any of those complaints that she had a good faith belief that there was anything illegal or wrong going on at the alliance. She may have had good suggestions about how to improve her workplace, but a good idea and a clear mandate of public policy are two separate things. And employers can't be expected to know in advance that an employee's belief about what health and safety means to her is going to subject them to legal liability if they don't comply with her beliefs. How do you respond to counsel's argument that the timing here is somewhat suspect, the termination and the complaint filed with OSHA? I think we have disputed issues of fact with respect to the timing in particular. It's very disputed between Ms. Gonzalez and Mr. Donatowicz about whether the write-ups that were issued to Ms. Gonzalez were issued May 18th, 2017, shortly after emails which Ms. Gonzalez had referenced about Mr. Donatowicz saying he was emailing internally that I told her not to go over my head. Is it your opinion that it doesn't really matter? It does not matter, Your Honor. Yes, that is my overall point here is that the retaliation prong of this tort is hotly disputed and it's not right for summary judgment. We concede that. The clear mandate of public policy prong is a legal question and it has been resolved technically twice, but at least once already on a legal question. It is an issue for the court to decide. It's not a jury question. So the fact that there might have been a short amount of time between the OSHA complaint and her termination is not relevant for today's purposes. The cases that Ms. Gonzalez relies upon, Gomez and I believe Sherman, do talk about the fact that there are OSHA complaints and there was a valid retaliatory discharge tort in those cases, but the content of the complaints, again, matters a lot. In each of those cases, there was an alleged violation of the Occupational Safety and Health Act. There is a clear provision in statute that corresponds to the complaints that were made. That is obviously sufficient for retaliatory discharge tort. We don't have anything remotely approaching that in this case. And the fact that Ms. Gonzalez made a complaint to OSHA is not particularly relevant if the complaint isn't about anything that violates public policy. Employers need to be on notice from a clear and specific guideline, as Turner says, the Illinois Supreme Court case that is binding on this case. Employers need to have notice about a clear, specific type of law or regulation that they are supposed to comply with before they can be held to be violating it by a termination of an employee. There is no public policy in this case that has ever been articulated except retroactively by Ms. Gonzalez's attorney. There is no way an employer could possibly comply with that type of situation. Trying to, as Turner mentions, trying to evaluate the clear and mediated public policy question with respect to general concepts like fairness or, in this case, health and safety of the general public, is going to swallow the at-will employment doctrine in Illinois. And further, we got disputing that Ms. Gonzalez had a good faith belief for going to OSHA, but there is no evidence in the record that she had any good faith belief about any illegality or wrongdoing. There was evidence developed in this case, and she had an opportunity to put on evidence on that point if she felt she had it to offer. Everyone who has looked at this question so far, OSHA, both Illinois and federal, the arbitrators in the Cook County Mandatory Arbitration Program, and the trial court judge has looked at this question, determined there is nothing warranting any type of OSHA intervention. There is no mandate of public policy at issue here. The trial court got this right on summary judgment, and we ask that you affirm that today. Thank you. Your Honor, there's three very quick points. Number one, counsel is correct that it was actually the Park District that funded the security there and was responsible for it, but that's what those write-ups were about. Don't go over my head, because she was going to the Park District to say, you have to beef up security at this facility, especially after the drug shooting incident. Number two, I forgot to answer Your Honor's question about the handbook. My recollection is the handbook, and maybe counsel will correct me if I'm wrong, makes no reference to shift swapping. So I think there was nothing in the handbook that talked to it about it. Is there anything in the handbook about telling your boss if there's something wrong? Well, in general, you have the general, you should report any concerns. So in a normal office environment, work environment, if you thought something was wrong, you'd go to your boss and you'd expect your boss to take it up the chain of command, and sooner or later some Garfield Park Conservatory boss would talk to the Park District boss and say, hey, we've got a problem here. Oh, you're correct, Judge. The handbook does encourage employees to say, if you've got a problem, please take it to your supervisor. My third and final point, again, and this is, I guess, the gist of the case. In Gomez, for example, quote, a plaintiff states a cause of action for retaliatory discharge in Illinois where he makes a sufficient showing that he was fired for reporting workplace health or safety concerns. So I think the issue is, did she go to the wrong place? And should that be fatal? And we also cited, in addition to that Johnson case, we cited by analogy Title VII cases, because that happens a lot there, too. A plaintiff goes and files a charge at the EOC of sexual orientation discrimination, but they don't cover that. Can the employer retaliate against them for doing that? And the federal courts on analogous Title VII have always said yes. The plaintiff can be wrong if what they believed was that was the place to go. Thank you. Okay, thanks for the briefs and the arguments. We'll take it under advisement and issue an opinion forthwith. We're going to adjourn briefly for a change of panel for the next case.